IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DONALD STROH,<br><br>    Plaintiff,<br><br>vs.<br><br>DATAMARK, INC.,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br><br>Case No. 2:05-CV-867 TS |

This matter is before the Court on Defendant's Motion for Partial Summary Judgment.[1]

I.  INTRODUCTION

Plaintiff began working for Defendant in January of 1997.  In September of 2003, Plaintiff and Defendant entered into a new Employment Agreement (the "EA").  In February of 2004, Plaintiff and eCollege—who had subsequently acquired Defendant and became its parent company—signed a Notice of Grant of Share Rights and Share Rights Agreement (the "SRA") and 1999 Stock Incentive Plan Share Rights Agreement (the "SIP").  Defendant is not a party to

---

[1]Docket No 45.

1

the SRA or the SIP.  Plaintiff resigned from Defendant on April 1, 2005.  In October of 2005, Plaintiff filed suit against Defendant for alleged unpaid commissions dating back more than two years from when he resigned, and for severance benefits under the EA.  Defendant now brings this Motion for Partial Summary Judgment, and asks the Court to determine, as a matter of law, that Plaintiff is not entitled to severance benefits for failure to satisfy a condition precedent, or alternatively, that Plaintiff's severance benefits, if any, do not include share rights.

Hearing on this matter was held before the Court on March 27, 2007.  Having considered the memoranda by the parties, as well as the arguments at the hearing, the Court now issues the following ruling.

## II.  DISCUSSION

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[2]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[3]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[4]

Defendant argues that, as a matter of law, Plaintiff is not entitled to severance under the EA because he failed to satisfy a condition precedent in the EA.  Defendant also makes several

---

[2] Fed. R. Civ. P. 56(c).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

alternative arguments to support its position that Plaintiff's severance, to the extent that he may be entitled to it, does not include share rights. Specifically, Defendant argues that Plaintiff's rights never began to vest, that Plaintiff cannot meet any contractual exception for acceleration of vesting, and that Defendant was not a party to many of the relevant agreements. The Court addresses these arguments in turn.

　　　*A. Failure to Satisfy the Condition Precedent*

　　　Defendant first argues that, because Plaintiff failed to satisfy a condition precedent—signing a severance and release agreement releasing his claims against Defendant—Plaintiff is not entitled to any severance benefits. Plaintiff responds that Defendant precluded satisfaction of the condition precedent.

　　　Paragraph 5(c) of the the EA provides:

> <u>Termination by the Company without Cause/Resignation for Good Reason</u>. . . . [Defendant] shall have an obligation to pay [Plaintiff] severance pay . . . provided that . . . [Plaintiff] executes a severance and release agreement substantially in the form attached hereto as Schedule C . . . waiving any claims against the Company.[5]

Accordingly, the EA sets forth a duty by Defendant to pay Plaintiff severance, provided that Plaintiff (1) resign for "good reason" as defined in the EA, and (2) sign a severance and release agreement releasing his claims against Defendant.

　　　Defendant emphasizes that because Plaintiff did not satisfy the second condition precedent, Plaintiff, as a matter of law, is not entitled to severance. Defendant also states, in a conclusory manner, that Plaintiff did not resign for good reason. Finally, Defendant argues that, under the EA, severance and claims for other compensation are mutually exclusive and that allowing Plaintiff to continue to seek severance would prejudice Defendant because discovery

---

[5]EA, at ¶ 5.

has largely focused on Plaintiff's claim for unpaid commissions, and would otherwise be inconsistent with principles of judicial estoppel and election of remedies.

Plaintiff responds that Defendant rejected Plaintiff's offer to sign the severance and/or misinformed Plaintiff that Plaintiff was not eligible for severance because he did not resign for good reason, and thus cannot claim that Plaintiff failed to satisfy the "waiver" condition precedent. Plaintiff points to an April 1, 2005 e-mail to the President of Defendant wherein Plaintiff sets forth his willingness to "live up to my obligations as set forth in paragraph 5(c)" of the EA. Plaintiff next points to the responding e-mail which asserts that, because "[Defendant] does not agree that you are entitled to terminate your employment for 'Good Reason,' as defined in [the EA]," Defendant has no further obligation to Plaintiff.

As a preliminary matter, the Court finds that neither the doctrine of judicial estoppel,[6] nor the doctrine of election of remedies is applicable here.[7] Furthermore, under the prevention doctrine, "[i]t is basic contract law that a party who prevents the occurrence of a condition precedent may not stand on that condition's non-occurrence to refuse to perform his part of the contract."[8] While it is clear from the EA that signing a release is prerequisite to obtaining severance benefits, a reasonable juror might find that the correspondence indicates that Plaintiff

---

[6] *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (noting that position to be estopped must generally be one of fact rather than law or legal theory, and that court must accept the prior inconsistent factual position).

[7] The modern formulation of Utah's rule "is not to prevent recourse to any remedy, but to prevent double redress for a single wrong." *McKeon v. Crump*, 2002 UT App 258, ¶ 12, 53 P.3d 494 (quoting *Palmer v. Hayes*, 892 P.2d 1059, 1060-61 (Utah Ct. App. 1995)).

[8] *Swaback v. American Info. Tech. et al.*, 103 F.3d 535, 542 (7th Cir. 1996); Restatement (Second) of Contracts § 245.

may have been dissuaded from signing any waiver by Defendant's assertions that Plaintiff did not "resign[] for good reason."[9]  Accordingly, there is a genuine issue of material fact as to whether Defendant prevented the occurrence of a condition precedent in the EA.  Therefore, the Court will not grant Defendant's Motion as it relates to judgment on the broader issue of Plaintiff's entitlement to severance.

    B.  *Vesting of Share Rights*

      1.  EA and SRA

Defendant argues that Plaintiff's claim for share rights fails as a matter of law because Plaintiff's rights had not vested at the time of his resignation.  Defendant emphasizes that the SRA provides that "[Plaintiff's] Share Rights will vest in a series of twenty-four (24) equal monthly installments of 416 shares beginning October 31, 2005 with the final installment to vest on September 30, 2007,"[10] and that Paragraph 2(a) of the SRA provides that unvested share rights will automatically terminate if an employee terminates employment prior to vesting.  Defendant argues that because Plaintiff resigned on April 1, 2005, his share rights were not vested, and his claim for share rights fails as a matter of law.

Plaintiff argues that whether vesting had begun at the time of his resignation is irrelevant because the EA requires immediate vesting upon resignation.  Plaintiff asserts that no contractual language indicates that vesting only occurs once vesting had begun on October 31, 2005.  Rather, Plaintiff argues that Paragraph 5(c) of the EA sets forth that Defendant had an obligation to pay

---

    [9]The Court also notes that, under some circumstances, the condition precedent may be entirely excused.  Restatement (Second) of Contracts § 245.

    [10]Notice to SRA.

Plaintiff severance, as described in Schedule B of the EA.  Plaintiff further argues that Schedule B provides for an "[a]cceleration of vesting of share rights."

Plaintiff also argues that adherence to the vesting period set forth in the SRA would constitute inadequate consideration for Plaintiff's continued employment, and otherwise render the severance provision of the EA illusory.  Plaintiff further contends that the EA should not be read together with the SRA because when an agreement is made up of multiple documents, those documents can only be read together "inasmuch as the agreements . . . were executed substantially contemporaneously."[11]  Similarly, Plaintiff argues that, for two agreements to be construed as one, the parties to both agreements must be the same.[12]  Finally, Plaintiff argues that that the SRA did not modify the EA.

The Court finds Plaintiff's argument to be unconvincing.  The Court first notes that neither of the parties argue that any provisions of any of the contracts at issue are ambiguous or that there are conflicting provisions within them.  Furthermore, the EA unambiguously provides that severance includes "*[a]cceleration of vesting of Share Rights as more fully set out in the [SRA], pursuant to the [SIP]*."[13]  According to this unambiguous language, the EA clearly incorporates the SRA by reference.  Incorporated contracts need not be executed contemporaneously to be read together.  Moreover, while Plaintiff's agreements pursuant to the EA and SRA were technically made with different parties, this is largely irrelevant due to the fact

---

[11]*Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987).

[12]Plaintiff cites *Harper v. Great Salt Lake Council, Inc.*, 976 P.2d 1213, 1218 (Utah 1999) (citing *Foote v. Taylor*, 635 P.2d 46, 48 (Utah 1981)).

[13]SRA, Schedule B (emphasis added).

that there was a parent-subsidiary relationship between them, and because the "four corners of the [EA] itself"[14] indicate an intent to incorporate the SRA by reference.

The SRA unambiguously provides that vesting was to begin on October 31, 2005. The SRA also clearly states that unvested share rights will automatically terminate if an employee terminates employment prior to vesting. Moreover, and as more fully discussed below, the SRA provides the specific conditions for acceleration of vesting of share rights. Finally, acceptance of Plaintiff's proposed interpretation would require the Court to find that the EA's acceleration provisions modified the SRA's acceleration provisions prior to Plaintiff even entering into the SRA. The Court declines to construe the contracts in such a manner.

  2. Exceptions for Acceleration of Vesting of Share Rights under the SRA

Defendant argues that the SRA expressly provides for the conditions under which unvested share rights would accelerate, or vest early, and that Plaintiff does not meet any of the exceptions.

The SRA provides that acceleration of vesting of share rights occurs under the following conditions: (1) Change in Control/Hostile Takeover, (2) Disability, Death, (3) Termination without Cause, and (4) Exercise of Discretion by Plan Administrator.[15]

Plaintiff argues that acceleration of vesting of share rights applies because the "Termination Without Cause" condition of the SRA has been met. Plaintiff contends that the SRA does not specify whether "Termination Without Cause" includes a forced resignation, or constructive discharge. Plaintiff further argues that the SRA is governed by the SIP, and that the

---

[14]*Foote*, 635 P.2d at 48.

[15]SRA ¶ 2(b).

latter provides the alleged omitted definition for the SRA because it states that "Involuntary Termination" is a termination by Defendant for reasons other than misconduct or a voluntary resignation following a reduction in duties or diminution of salary.  Plaintiff also attempts to support this construction by asserting that: under the EA, benefits for employees terminated without cause and those who "Resign for Good Reason" are treated the same; the definitions of the terms "Termination without Cause" and "Resign for Good Reason" in the EA are almost identical to the definition of "Involuntary Termination" in the SIP; a "Termination without Cause" in the EA is one where there has been no willful or material violation of policy, misconduct, conviction of a felony, etc.  Plaintiff ultimately concludes that the term "Termination Without Cause" in the SRA should be read to include "Resignation for Good Reason."

Defendant responds that the parties did not intend for "Involuntary Termination," as used in the SIP, and "Termination Without Cause," as used in the SRA, to mean the same thing.  More specifically, Defendant emphasizes that while Paragraph 2(b)(i) of the SRA incorporates "Involuntary Termination" into the "Change in Control/Hostile Take-Over" exception, there is an intentional omission from "Involuntary Termination" under the "Termination Without Cause" exception.  Finally, Defendants argue that the plain language of the SRA excludes any type of resignation from "Termination Without Cause."

Again, the Court finds that Plaintiff's argument is unconvincing.  The SRA's "Termination Without Cause" exception specifically provides that, in order to apply, it must be "*the Corporation [that] terminates* the Participant without cause."[16]  Such language

---

[16] SRA, ¶ 2(iii) (emphasis added).

unambiguously precludes resignation, for good cause or otherwise, as invoking the particular exception at issue.  Moreover, Plaintiff's resort to the SIP to interpose the terms "Termination Without Cause" and "Involuntary Termination" in order to assert a contrary interpretation is untenable.  Upon a close examination of the SIP, the Court notes that the "Involuntary Termination" term is utilized only as it relates to the subject of "Change in Control/Hostile Take-Over."  Similarly, the SRA reflects that "Involuntary Termination" as used in the SIP, applies to the SRA's "Change in Control/Hostile Take-Over" exception.  However, the SRA's "Termination Without Cause" exception omits any reference to the SIP's "Involuntary Termination" provision.  Such an omission indicates an intent by the parties that the terms "Involuntary Termination" and "Termination Without Cause," as used in the SRA, not be synonymous.  Accordingly, the Court finds, as a matter of law, that the SRA's "Termination Without Cause" exception does not apply.

Because the Court has determined that Plaintiff is not entitled to share rights under abovementioned agreements, the Court need not address Defendant's arguments that Plaintiff is not entitled to share rights because of distinct corporate identity among the parties to the agreements.

As a final matter, the Court notes that one day previous to the hearing on these issues, Plaintiff filed an Affidavit in Opposition to Defendant's Motion.[17]  The Court construes the Affidavit as improper argument on the issues before the Court, and further finds the filing to be untimely.  The Court will, therefore, strike the Affidavit.

---

[17]Docket No. 62.

## III.  CONCLUSION

For the foregoing reasons, it is therefore

ORDERED that Plaintiff's Affidavit in Opposition to Defendant's Motion for Partial Summary Judgment (Docket No. 62) is STRICKEN.  It is further

ORDERED that Defendant's Motion for Partial Summary Judgment (Docket No. 45) is GRANTED IN PART, and DENIED IN PART.  Defendant's Motion is DENIED as it relates to the total preclusion of Plaintiff's severance claim.  Defendant's Motion is GRANTED in that Plaintiff is not entitled to share rights as they relate to his severance claim.

SO ORDERED.

DATED   March 29, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge